## HAUBERGER et ux. *v.* ROOT et al.

Testator, having given a legacy to the separate use of his daughter for life, remainder to her children, purchased land from her husband's assignee with a part of the fund intended to pass by the will, for which a deed was made after his death to his executors. In ejectment by husband and wife to enforce the trust as to the land, a conditional verdict, charging the price on the land payable to the children, according to the trusts of the will, and releasing the executors from so much, on account of the legacy, was held to be proper.

IN error from the Common Pleas of Montgomery county.

*March* 24. The question argued here was, whether the court was right in directing the *condition* to be attached to the plaintiffs' verdict. On the trial, it appeared that Hauberger, who with his wife were the plaintiffs, had made an assignment of his property, in 1840, in trust for creditors, including the land in question. The plaintiff proved, that, on the day the land was sold by the assignee, and previously, two persons, at the request of his wife, had applied to her father to purchase the property at the public sale, as she would have nothing to live on if it was sold. They said to him that she "had a great deal more to get than the lots would come to," which he admitted; and that he had promised his daughter, the plaintiff's wife, that he would buy them in. These persons were then ignorant of the existence of a will of the father. He subsequently gave instructions to buy the land at the sale, desiring that Hauberger, the plaintiff, might release all his interest, and offering, if he would release his right to the surplus under the assignment, so that he could have nothing more to do with it, and could not spend it, he would pay his debts. The witness said "this might come off her portion;" to which the father made no reply. On the 1st of January, 1841, the day of the sale, plaintiff released to his assignee, in trust for the separate use of his wife, all interest in the surplus under the assignment, which amounted to about $700; and the assignee conveyed all his interest to the executors of J. Root, on April 9, 1841. The defendants, under objection, gave in evidence the will of J. Root, the father, which directed that two-thirds of the residue of his estate should be paid to such person as his executors should appoint in trust for the separate use of plaintiff's wife (and another married daughter) for life—remainder equally among their children; and declaring that a sum of money paid by him to plaintiff should be in full of his legacy out of the estate. This will was dated May 1, 1840, and defendants were appointed executors.

Under objection, they also showed the conveyance of April 9, 1841, by the assignee of Hauberger, to themselves, in fulfilment of a sale made January 1, 1841, to their testator, under which they entered. The amount bid at that sale was $580, which was reduced in consequence of the bidders being apprized of the intentions of the buyer to purchase in trust for plaintiff's wife. They also gave in evidence, that Jacob Root had said he would pay the money for the land, as she (the wife) might as well have her part over there as in *the place*, which was on the opposite side of the river.

Before closing his case, plaintiff offered, that if there was a verdict for him, a trustee might be appointed, under the direction of the court, to take charge of the lands, for the separate use of Mrs. Hauberger.

The defendants offered to make a deed to a trustee, lawfully appointed, to secure a separate estate to the wife for this and the other property purchased at the assignee's sale, upon the same trusts provided in the will as to her portion of the personal property, upon a release of so much, on account of the legacy, as was paid for that property at the sale.

The charge of the court (KRAUSE, P. J.) calling these similar agreements, was the fourth error assigned. The first three were to the evidence, and are detailed in the opinion of this court, as is the fifth, which was to a sentence in the charge.

*Stinson* and *Mulvany*, for plaintiff in error, contended that in this action the question of ademption of legacies could not be raised, but that it was confined to the Orphans' Court, on the distribution account.

*Hobart* and *Dillingham*, contrà.—The land was in fact substituted for the price paid out of the intended legacy, (1 Rop. on Leg. 256, 257; 2 Atk. 48;) and the executors, who are responsible for that, must be secured before they deliver over the property. That a conditional verdict is the proper *form* in this state, needs no authority, if chancery would protect the executors by a decree similar in effect.

*April* 12. COULTER, J., (after giving an outline of the evidence.)—The real controversy between the parties would seem to be, whether Mrs. Hauberger should acquire a separate estate to her and her heirs, and which might be alienated, and that she should still be entitled to receive, during her life, the interest of the one-third part of the personal estate, and her children the amount after

K

her death: in other words, whether they should get the land and the money both, or whether she was entitled only to a separate estate during her life, the inheritance to be secured to her children as the owners of the fund with which the land was purchased.

The first error assigned is the admission of the will of Jacob Root in evidence. But it is difficult to perceive how, with any front of justice, it could have been excluded. The defence alleged was, that by agreement of Hauberger and the testator, he, the testator, converted the personal fund or legacy designed for the separate use of Hauberger's wife and her children, into real estate: that he merely changed its form and character, without altering its purpose and destination. It is no novelty in jurisprudence to impress upon land the same qualities and uses which attended the personal fund by which it was produced, nor to give the character of real estate to money produced by the sale of the realty; and by this judicial alchemy the highest ends and purposes of justice are sometimes attained. That the will itself does not make out the whole case, is admitted. But it was an increment in the sum of proof necessary to maintain the defendant's issue. It showed the existence of the fund, and the purpose to which it was devoted, at the time, and before, the testator agreed to make the purchase. It was the substratum upon which the alleged case of the defendants was built. Perhaps it was a small circumstance towards making out the contract alleged by defendants; but it was relevant, and the best evidence in existence of the uses to which the personal fund was devoted. The strongest proof is often produced by consecutive facts, any one of which, being isolated, would be of no great consequence; but, when connected by the cohesive chain of mutual relevancy, they become irresistible. The argument that the will was then inchoate, and the testator might have changed his intention, is of no consequence, because he died without giving any sign of revocation. And of course it must be executed in all its parts, unless the defendants have established the contract which they allege—that the testator and Hauberger agreed that the fund should merely be converted into land. The facts to establish that contract were for the jury; its legal effect, if established, was for the court.

The second error assigned is the admission of the inventory of the personal estate of Jacob Root, deceased, in evidence. But it was properly admitted, as a link in the chain of circumstances necessary to make out the contract alleged by the defendants. It exhibited, in connection with what the old man advanced for the

land, the amount of the legacy bequeathed to Elizabeth and her children out of the personal estate, as it existed at the time of making the will, her legacy being one-third, and was rather advantageous than otherwise to the plaintiffs. The spirit of the exception would seem to indicate a desire to shut out light and truth from the issue, instead of an endeavour to preserve it from impertinent or secondary evidence.

The third error assigned is the admission of the deed from John Krause, the assignee of Hauberger, to the executors of Jacob Root, the deceased, who are the defendants. The plaintiffs had given in evidence their deed for the property to John Krause; they had also given in evidence the sale to Jacob Root: and why they should object to the deed made to the executors of Root after his death, cannot be readily perceived by me. They had shown that the legal title was out of themselves, and could only succeed in this suit by establishing a trust in defendants. The deed being made to them as executors, they would hold for the same trust and the same title that the testator would have held, to whom the plaintiffs had established the sale was made. It was offered by the defendants, not to establish title in themselves individually, because it could have no such effect, but as part of the *res gestæ,* and to show that the legal title was diverted from John Krause, the assignee. The evidence was, in fact, beneficial to the plaintiff, and was properly admitted.

The fourth error assigned is, that the court erred in charging the jury that "at any rate this seems to be an admitted trust: John Hauberger has executed at the bar an agreement, and filed it in the cause, that if the verdict be in his favour, the court may appoint a trustee for his wife Elizabeth, to take charge of the land for her, and her heirs and assigns, for her sole and separate use; and the defendants have filed a similar agreement." This is but a mere recital by the judge of what took place on the trial, and asserts what was unquestionably true. It was contended, however, here, by the plaintiffs' counsel, that the court below erred in permitting the defendants to file such paper. But it was filed without objection; and, as the only operation it could have was in favour of the plaintiffs, we do not perceive why the court ought to have interfered. The plaintiffs alleged a trust, and this paper admitted a trust: the court do not say that it was any evidence of the terms or nature of the trust, or of the contract alleged by the defendant; and it is evident that the court noticed and stated the fact of the defendants filing the paper as a circumstance favourable to the plaintiffs, be-

cause they add, "There is, then, a trust, at all events, to which the statute has no application." There is no error in this part of the charge.

The fifth and last error assigned is that part of the charge in which the court instruct the jury as follows: "But if the jury also find that Jacob Root and John Hauberger agreed that the former should buy this lot and advance the price out of the legacy given to Elizabeth Hauberger in his will, already executed, and that the latter was to give his property assigned to John Krause, in trust for the said Elizabeth, then they should annex the condition also, that the verdict should not be executed until the plaintiffs had agreed to release the executors of Jacob Root from the sum of $581, and that the sum should be charged on the land in dispute, as a lien payable to her children at her decease."

Equity is part and parcel of our law, that equity whose principles have been established by a long series of chancery decisions, and by the influence of which the ancient rigour of the common law is softened and adapted to the existing state of society. As we have no court of chancery, it becomes necessary so to mould the common law forms as to admit the application of these principles so far as we have adopted them. He may have been a bold lawyer, but he was a just and wise one who first suggested a conditional verdict in actions of ejectment, not to assist a plaintiff in a broken or imperfect case, but to compel him to do equity before the law allowed him the benefit of his verdict. In this state, a plaintiff can recover upon an equitable title; but then he who so claims must do equity before he can succeed in ejectment; Werkheiser v. Werkheiser, 3 Rawle, 326. And a conditional verdict is good, under the practice of this state; Coolbaugh v. Pierce, 8 Serg. & Rawle, 418; Kunckle v. Kunckle, 1 Dallas, 364. And a conditional award under the act of 1810 is good, which was ruled on the principle that the arbitrators are placed in the position of a court and jury, and have the same power; Nicholas v. Wolfersberger, 5 Serg. & Rawle, 167. When the application of the principle of equity sought to be enforced is clear, why not apply it to the case, by means of the allowable operation of a conditional verdict. There is no necessity of turning the plaintiff out of court until he does equity, and thus prolong controversy and multiply suits. The conditional verdict has the effect of a decree in chancery. It enjoins the plaintiff until he does what he ought to do, and thus ends the controversy. In this case, the court submitted to the jury for their determination, whether the contract which established the terms of the trust had been

proved or not; and as the contract was by parol, this was right. A parent may advance a portion, or even part of a portion in favour of a child; 2, Williams, 827; Kreider *v.* Boyer, 10 Watts, 56. In such case, the portion or part advanced will be adeemed. This rule is founded upon the general presumption that the father does not intend to give double portions to one child. Parol evidence is admissible to fortify this legal presumption; Kreider *v.* Boyer, *ut sup.* 2 Lomax, 111. The instruction of the court, therefore, that if they found that it was agreed that Root the elder, with the assent of Hauberger, should advance the amount of the legacy, or so much as was necessary for that purpose, to buy the land for the use of his daughter, they should annex a condition to the verdict, which would give effect to that agreement, was not error. It would have been rank injustice to allow the plaintiffs to come into court and claim the execution of the trust, merely so far as it was in their favour, without regard to the other terms and conditions of the contract by which it was created. If they took under the contract, they ought to comply with it. Whether the contract was sufficiently established by evidence or not, does not belong to this court to say. There was evidence of it, and that was submitted to the proper tribunal for decision. There was, in the opinion of this court, no error where the plaintiff assigns it.

The judgment is therefore affirmed.